### The EXPLORATION COMPANY OF LOUISIANA, INC.

v.

### UNITED STATES of America.

Civ. A. No. 86–0849.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

June 11, 1987.

Robert M. Willan, Rockville, Md., Edwin Hunter, Lake Charles, La., for Exploration Co. of Louisiana, Inc.

Joseph S. Cage, Jr., U.S. Atty., Lawrence W. Moon, Jr., Lafayette, La., Robert L. Welsh, Tax Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

## MEMORANDUM RULING

WALTER, District Judge.

Pending for determination are The Exploration Company of Louisiana, Inc.'s ("ECL") and the United States of America's cross motions for summary judgment. ECL contends it was disallowed a refund for windfall profit tax withheld for the year 1983 in the amount of $146,437.83. ECL claims that it is an "independent producer," and, therefore, is eligible for reduced tax rates for its tier 1 production and for the stripper well exemption for certain tier 2 production attributable to its interests in certain leases in the Vinton Dome Field property in Calcasieu Parish, Louisiana. The Government opposes, asserting ECL does not qualify as an independent producer. This argument is based on several grounds, which include:

(1) The interest owned by ECL was not an operating mineral interest in existence as such on January 1, 1980, and, thus, production from such an interest is not "independent producer oil"; and

(2) ECL does not qualify for the independent producer or stripper well exemptions because its interest had been held by a non-independent producer.

Finding the Government's first argument dispositive, ECL's motion for summary judgment is Denied, and the Government's motion is Granted.

The mineral interests in the Vinton Dome Field property involved in this matter includes acreage covered by the "G Lease", the "W Lease", the "M Lease", the "L Lease", the "BB Lease", and the "F.H. Gray Units A, B, C and D Lease." These leases were operated by Union Oil Company of California ("Union") as lessee under the various term hydrocarbon leases granted by Matilda Gray and William Gray between 1941 and 1943. The Grays retained a royalty interest and a right to reversion of the working interest at the expiration of the term of each lease. These leases expired on December 1, 1982.[1]

Effective upon the expiration of Union's leases, the Grays [2] entered into a second group of hydrocarbon term leases with Marsden Miller, Jr. and William Huls. The leases covered the "BB, L, M, G, W and

---

1. The "BB Lease" was entered into on April 3, 1967, between Matilda Gray, individually and as agent for Matilda Stream and Opal Gray, as lessor, and Union, as lessee; its term was to expire on or before April 3, 1997. The "F.H. Gray Lease" was not held by the Grays prior to November ·30, 1982, but was transferred to Union in 1943 by another family member. Effective November 30, 1982, Union assigned and released its working interest in the "BB Lease" and the "F.H. Gray Lease" to the Grays for an agreement to be held harmless from future claims involving the M, G, W and BB Leases.

Despite these noted differences in termination dates, they are unimportant to the case at bar, and all leases to Union will be treated as expiring on December 1, 1982.

2. The mineral interests in the Vinton Dome Field property noted above as belonging to Matilda Gray and William Gray are presently owned by Matilda Stream, Opal Gray, the GED–I Trust and the GED–II Trust, hereinafter the Grays.

F.H. Gray Leases," and reserved a 30% royalty interest in all but the F.H. Gray Lease, where the Grays retained an overriding royalty. The effective date for these leases was December 2, 1982.[3] Miller and Huls immediately assigned (subleased) their interests in these leases to ECL, retaining 2% of an 8/8 overriding royalty. ECL assumed the responsibilities as operator for the various leases.

The operating mineral interest in the instant property was owned, held, developed and operated by Union, a major oil company, retailer and refiner, from 1941 until December 1, 1982. As an integrated oil company, Union at no time qualified as an independent producer within the meaning of 26 U.S.C. § 4992(b). However, for all quarters between September 30, 1979, and December 2, 1982, the Grays, Miller and Huls, and ECL met the prerequisites for classifying as an independent producer. ECL also met these requirements during the year 1983. Additionally, Union had certified certain wells as stripper wells under the June 1979 Department of Energy Reg. § 212.131. These stripper classifications were maintained by ECL when it became the operator of these leases.

ECL timely filed a claim for over withheld windfall profit tax for the year 1983 in the amount of $545,000.00. The refund was based on the application of the net income limitation to the windfall profit tax liability for crude oil produced from the Vinton Dome Field property. The District Director disallowed $146,437.83 of this amount based upon unsettled issues concerning the independent producer tax rates. ECL then filed this action on April 18, 1986, to recover the disallowed amount, maintaining:

(1) That it is entitled to use the independent producer tax rates for calculating the windfall profit tax refund on tier 1 production attributable to its

working interest in the Vinton Dome Field property; and

(2) That it is entitled to the independent producer stripper well exemption from the tax for certain tier 2 production attributable to its working interest in the Vinton Dome Field property.

The tax benefits claimed by ECL as an independent producer apply only to "independent producer oil." 26 U.S.C. § 4987(b)(2). This term is defined in § 4992(a) as "that portion of an independent producer's qualified production for the quarter which does not exceed such person's independent producer amount for such quarter," and qualified production is the "number of barrels of taxable crude oil—

(A) of which such person is the producer,

(B) which is removed during such quarter,

(C) which is tier 1 oil or tier 2 oil, and

(D) which is attributable to the independent producers working interest in a property."

26 U.S.C. § 4992(d)(1). Here, ECL's entitlement to the two exemptions allowed independent producers turns on whether the mineral interest held by it is a "working interest" for purposes of the windfall profit tax.

The Windfall Profit Tax Act ("WPTA") defines "working interest" as an "operating mineral interest (within the meaning of Section 614(d))," 26 U.S.C. § 4992(d)(2); that is, the interest in the minerals in place that is burdened with the cost of production.[4] Moreover, the questioned working interest must have been "in existence as such an interest on January 1, 1980," to be entitled to the reduced independent producer rates. 26 U.S.C. § 4992(d)(2)(A)(i). In the present matter, the interest owned by ECL was *not* in existence as an operating interest on January 1, 1980; therefore, is

---

**3.** The effective date of the "BB and F.H. Gray Leases" was November 30, 1982; however, all leases will be treated as being effective on December 2, 1982. *See supra* fn. 1.

**4.** Working interest also includes an interest that would require the taxpayer to take production

costs into account "if the mine, well or other natural deposit were in the production stage." 26 U.S.C. § 614(d). However, this provision is inapplicable to the case at bar because the property covered by the various leases was in the producing stage prior to January 1, 1980.

not a working interest for purposes of the windfall profit tax, and production from this interest is not "independent producer oil".

The mineral interests owned by ECL in the Vinton Dome Field property did not bear the costs of development and operation on January 1, 1980. On this date, 100% of the working interest in the subject property was owned by Union. In fact, ECL's operating interest in the Vinton Dome Field property was created out of a reversionary interest which did not arise until December, 1982.[5]

An independent producer may only avail itself of the reduced windfall profit tax rates and of the independent producer stripper well exemption from the tax for its "independent producer oil." In the case at bar, ECL's production from its interest in the Vinton Dome Field property was not attributable to a working interest in existence as such an interest on January 1, 1980. This production was not independent producer oil, and, therefore, ECL is not entitled to these claimed exemptions. ECL is not entitled to the refund it is seeking.

An operating mineral interest may also be in existence as such an interest on January 1, 1980, if a qualified overriding royalty interest was in existence on January 1, 1980, and on February 20, 1980, there was also in existence a binding contract under which the overriding royalty interest could be converted into an operating mineral interest. 26 U.S.C. § 4992(d)(2)(A)(ii). This provision is not applicable to the case at bar; neither an overriding royalty interest nor a binding contract were in existence.

Considering the foregoing holding, ECL's remaining arguments concerning transfer are Moot.

## JUDGMENT

Pursuant to the foregoing Memorandum Ruling,

IT IS ORDERED, ADJUDGED and DECREED that the Exploration Company of Louisiana, Inc.'s ("ECL") motion for summary judgment is Denied;

IT IS FURTHER ORDERED, ADJUDGED and DECREED that the Government's motion for summary judgment is Granted, thereby denying ECL's claim for a refund for over withheld windfall profit tax for the year 1983 and dismissing the captioned with prejudice.

---

5. ECL argues that, "the legal interest represented by Lease No. 2 was an operating mineral interest under Section 614(d) in existence on January 1, 1980, since if its interests in wells were in the production stage, it would be required to take costs of production into account in computing the 50–percent-of-taxable-income limitation of Section 613(a)." This argument is not persuasive. *See supra* fn. 4.